UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
MAXINE FREELAND,

                Plaintiff,

    -against-

SISAO LLC and ELIEZAR SHARABI,

                Defendants.
-------------------------------------------------X

2007 Civ. 3741 (CPS) (SMG)

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

---

JOHN C. GRAY, ESQ.
SOUTH BROOKLYN LEGAL SERVICES, INC.
105 Court Street
3rd Floor
Brooklyn, New York 11201
(718) 237-5531
Attorneys for Plaintiff

Of Counsel:
    Edward Josephson
    Michael Weisberg

# TABLE OF CONTENTS

PRELIMINARY STATEMENT                                                          1

STATEMENT OF FACTS                                                             2

ARGUMENT                                                                       3

I.   DISMISSAL IS APPROPRIATE ONLY IF THE COMPLAINT CANNOT BE              3
     READ TO ALLEGE ENOUGH FACTS TO STATE A CLAIM FOR RELIEF
     THAT IS PLAUSIBLE ON ITS FACE.

II.  ACCEPTANCE OF PLAINTIFF'S SECTION 8 VOUCHER IS A REQUIRED             4
     ACCOMMODATION WITHIN THE MEANING OF THE FHAA.

     A.   Salute does not require dismissal in the instant case because Plaintiff is    6
          seeking an accommodation directly correlated with her disability.

     B.   Following Barnett, acceptance of Plaintiff's Section 8 voucher is an          7
          accommodation under the FHAA. Even assuming Plaintiff's requested
          accommodation was required to address the economic effects of her
          disability, she is still entitled to this accommodation under the FHAA.

III. DEFENDANTS HAVE NOT SHOWN THAT THE ACCOMMODATION                      11
     REQUESTED BY PLAINTIFF IS UNREASONABLE AS A MATTER OF
     LAW.

CONCLUSION                                                                     20

# PRELIMINARY STATEMENT

Maxine Freeland suffers from congestive heart failure and morbid obesity, and as a result she can no longer work. Defendants Sisao LLC and Eliezar Sharabi discriminated against Ms. Freeland by refusing to accept her Section 8 voucher to pay her rent. The Complaint alleges that the Defendants' conduct violates the Fair Housing Amendments Act, the New York State Human Rights Law, and the New York City Human Rights Law.

Defendant motion to dismiss must be denied. The Second Circuit precedent upon which Defendants rely has been superseded by a more recent Supreme Court ruling. Furthermore, Defendants' characterization of Ms. Freeland's request as an "economic accommodation" is inaccurate, because Ms. Freeland's inability to work, and thus her ability to afford the apartment without the Section 8 voucher, is directly caused by her disability. Finally, Ms. Freeland requires an accommodation not only because she cannot afford the apartment she already lives in, but also because her disability makes it impossible to locate another acceptable apartment that will accept her voucher. Without acceptance of the Section 8 voucher, she will not have equal opportunity to enjoy her apartment.

## STATEMENT OF FACTS

Ms. Freeland is a 54-year-old physically disabled tenant who suffers from congestive heart failure and morbid obesity. (Compl., Sept. 6, 2007, ¶¶ 28-30.) As a result of her disabilities and the medications she takes Ms. Freeland has severe difficulty with normal mobility: she does not walk more than 2 blocks at a time without stopping to catch her breath; it can take her as long as 15 minutes to walk up the three flights of stairs to her apartment; and she suffers dizziness, forgetfulness, and heart palpitations. (Compl. ¶¶ 31-32.) Ms. Freeland can no longer work because of her disability, and her source of income is Social Security Disability ("SSD"), from which she receives $735.00. (Compl. ¶¶ 28, 30.)

Ms. Freeland's rent is currently $798.37, which she cannot afford on her income. (Compl. ¶ 33.) In 2003 Ms. Freeland applied for a Section 8 housing voucher to help her pay her rent. (Comp. ¶ 34.) The agency issuing the voucher, the New York City Housing Authority, receives payments from the Department of Housing and Urban Development, and pays a portion of the rent directly to the landlord on behalf of a tenant who receives the voucher. (Compl. ¶¶ 23, 26.) Ms. Freeland received a Section 8 voucher that was activated in February 2006. Compl. ¶ 35.

After activation of her voucher Ms. Freeland made a request to Sisao LLC head officer Eliezar Sharabi that Sisao LLC accept her Section 8. (Compl. ¶ 36.) After stating that he first had to consult with a "silent partner", Sharabi later informed Ms. Freeland that Sisao LLC would not take her Section 8 voucher. (Compl. ¶¶ 36-37.) On multiple subsequent occasions Ms. Freeland renewed her request to Sharabi that Sisao LLC accept her voucher; each time Sharabi informed Ms. Freeland that Sisao LLC would not do so. (Compl. ¶ 38.)

## ARGUMENT

### I.   DISMISSAL IS APPROPRIATE ONLY IF THE COMPLAINT CANNOT BE READ TO ALLEGE ANY SET OF FACTS ENTITLING PLAINTIFFS TO RELIEF

Defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P. Rule "12(b)(6) or in the alternative 12(c)" on the ground that it "fails to state a cause of action." (Defs' Notice of Motion; Defs' Memo. in Support, 1.)

The function of a Rule 12(b)(6) motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980). "A motion for judgment on the pleadings under Fed.R.Civ.P 12(c) is analyzed under the same standard as a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Life Product Clearing LLC v. Angel, --- F.Supp.2d ---, 2008 WL 170193 (S.D.N.Y.) (citing Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994)). In both "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." Nettis v. Levitt, 241 F.3d 186, 191 (2d Cir. 2001); see Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). Accordingly, dismissal is only appropriate where the pleading fails to allege " 'enough facts to state a claim for relief that is plausible on its face.' " Life Product Clearing, 2008 WL 170193 (citing Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007)). The Court is "required to read the complaint with great generosity," Chan v. City of New York, 803 F. Supp. 710, 715 (S.D.N.Y. 1995) (quoting Yoder v. Orthomolecular Nutrition Institute, Inc., 751 F.2d 555, 558 (2d Cir. 1985)), as to both the facts alleged and the claims made. For the reasons that follow, Defendants' motion to dismiss should be denied.

## II. ACCEPTANCE OF PLAINTIFF'S SECTION 8 VOUCHER IS A REQUIRED ACCOMMODATION WITHIN THE MEANING OF THE FHAA.

The Fair Housing Amendments Act ("FHAA") makes it unlawful to discriminate against a disabled individual "in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter...." 42 U.S.C. § 3604(f)(1)(A). The FHAA also prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling...because of a handicap of that person...." 42 U.S.C. § 3604(f)(2)(A). "Discrimination" includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use an enjoy a dwelling...." 42 U.S.C. § 3604(f)(3)(B).

Plaintiff, who is suffering from congestive heart failure and morbid obesity, has requested that the Defendants accept her Section 8 housing voucher. Defendants have refused to do so. Plaintiff is thus requesting that the Defendants make a reasonable accommodation to her disability, by making an exception and accepting her voucher. Courts have held that the FHAA requires landlords to make similar accommodations for disabled tenants. See, e.g., Giebeler v. M&B Assocs., 343 F.3d 1143 (9th Cir. 2003) (holding that FHAA requires landlord to reasonably accommodate tenant's disability—which rendered him unemployable and therefore without sufficient income to qualify for apartment—by assessing individually the risk of nonpayment created by his specific proposed financial arrangement that the apartment be rented by his financially qualified mother, rather than inflexibly applying a rental policy forbidding cosigners); Bentley v. Peace and Quiet Realty 2 LLC, 367 F.Supp.2d 341 (E.D.N.Y. 2005) (holding that a disabled tenant's request for an apartment on a lower floor was within the scope of

accommodations contemplated by the FHAA); Shapiro v. Cadman Towers, Inc., 844 F.Supp. 116 (E.D.N.Y. 1994) (granting preliminary injunction and holding that modification of cooperative housing corporation's first come/first served policy for awarding indoor parking spaces to permit disabled tenant who suffered from multiple sclerosis to have parking space was likely to be "reasonable accommodation" under FHAA).

Defendants argue that Plaintiff is merely seeking alleviation of economic disadvantage, rather than accommodation of her disabilities, and rely on Salute v. Stratford Greens Garden Apts., 136 F.3d 296 (2d Cir. 1998), in arguing for dismissal of Plaintiff's complaint. (Defs. Memo of Law, 4.) In Salute the plaintiffs requested that defendant—the owner of an apartment building in which plaintiff sought to rent an apartment—make an exception to its policy of refusing to accept Section 8 vouchers, as a reasonable accommodation to the plaintiffs' disabilities. The court affirmed dismissal of the plaintiffs' complaint, on the grounds that the accommodation requested by the plaintiffs did not "meet" and "fit" the plaintiffs' disabilities, and that the defendant's policy of refusing Section 8 vouchers applied equally to the disabled and non-disabled alike. Id.

However, the Supreme Court's decision in U.S. Airways v. Barnett, 535 U.S. 391 (2002), supersedes the reasoning in Salute by holding that accommodation requirements "(1) do sometimes require preferring disabled individuals over others who are otherwise similarly situated but are not disabled; and (2) are not limited only to lowering barriers created by the disability itself." Giebeler, 343 F.3d 1143, 1154 (rejecting the reasoning in Salute because "Salute…[was] decided before Barnett, and [its] reasoning cannot be reconciled with the Supreme Court's analysis in that case"). See also Peebles v. Potter, 354 F.3d 761 (8th Cir. 2004) (holding that Barnett requires the court to reach a "similar conclusion" as the Giebeler court as to

the scope of "accommodation" required by the Rehabilitation Act). Furthermore, the facts of the instant case are significantly different than those in Salute and require a different result.

**A.    Salute does not require dismissal in the instant case because Plaintiff is seeking an accommodation directly correlated with her disability.**

Although Salute and the instant case both concern a landlord's refusal to accept the Section 8 voucher held by a disabled individual, they differ significantly with respect to each individual's status vis-à-vis the landlord's building, and thus with respect to the accommodation they require. In Salute, the plaintiffs did not live in the building for which they were seeking to use their Section 8 vouchers. Rather, both resided elsewhere at the time and required an accommodation in order to be able to move into the building. Presumably, just as they searched for and located apartments in that building, they were able to continue to search for apartments in other buildings.

Here, Plaintiff already resides in the apartment for which she seeks to use her Section 8 voucher, and has done so for over 15 years. (Compl. ¶ 28.) Plaintiff requires an accommodation from Defendants for two reasons. First, on her SSD income, she cannot afford her monthly rent of $798.37 and as a result she has accrued rent arrears. (Comp. ¶¶ 28, 33, 40.) Second, because of her disability and the medications she takes, Plaintiff is unable to adequately search for an apartment where she can use her Section 8 voucher. (Compl. ¶ 39.) Her disabilities cause her severe difficulty with mobility, preventing her from walking for more than 2 blocks without stopping to catch her breath, and require her 15 minutes to walk up 3 flights of stairs. (Compl. ¶ 31.) As a result, Plaintiff is often compelled to stay at home, except for doctor appointments and to run necessary errands. (Compl. ¶ 30.) Additionally, the medications that Plaintiff takes for her disability also affect her ability to leave her apartment, causing her dizziness, frequent urination, forgetfulness, and heart palpitations. (Compl. ¶ 32.)

Thus, while in <u>Salute</u> the court found that plaintiffs needed acceptance of their Section 8 voucher because of their poverty, here Plaintiff needs her landlord to accept Section 8 because the immediate physical effects of her disability prevent her from searching for other apartments where she can use her voucher. Plaintiff's requested accommodation is therefore not a purely "economic accommodation," as the Second Circuit found in <u>Salute</u>, and <u>Salute</u> therefore does not bar her claim.

B.   **Following Barnett, acceptance of Plaintiff's Section 8 voucher is an accommodation under the FHAA. Even assuming Plaintiff's requested accommodation was required to address the economic effects of her disability, she is still entitled to this accommodation under the FHAA.**

In <u>Salute</u>, the plaintiffs requested that the defendant landlord make a reasonable accommodation to their disabilities, by making an exception to its policy of refusing Section 8 housing vouchers. The <u>Salute</u> majority affirmed summary judgment for the landlord, reasoning that the accommodation requested did not "meet[] and fit[] [plaintiffs'] particular handicaps," <u>Salute,</u> 136 F.3d at 301; and that the defendant's policy of refusing to accept Section 8 vouchers applied equally to disabled individuals and non-disabled individuals alike:

> Congress could not have intended the FHAA to require reasonable
> accommodations for those with handicaps every time a neutral policy imposes
> and adverse impact on individuals who are poor. The FHAA does not elevate the
> rights of the handicapped poor over the rights of the non-handicapped poor.

<u>Id.</u> at 302.

It is precisely this narrow interpretation of "accommodation" that the Supreme Court rejected in <u>U.S. Airways v. Barnett</u>.[1] In <u>Barnett</u>, the plaintiff was an employee of U.S. Airways,

---

[1] Although the statute at issue in <u>Barnett</u> was the Americans with Disabilities Act ("ADA"), "both statutes [the ADA and the FHAA] require 'that covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities,'" and therefore should be "interpret[ed] in tandem." <u>Tsombanidis v. West Haven Fire Dept.,</u> 352 F.3d 565, 573 (2d Cir.

who injured his back while working in a cargo-handling position. Invoking his seniority rights, the plaintiff transferred to a less strenuous job in the mailroom. After learning that two other employees with more seniority were planning on invoking their rights under the airline's seniority system and transferring to the plaintiff's mailroom position, the plaintiff requested that the airline make a reasonable accommodation to his disability, by making an exception to the seniority system and allowing him to remain in the mailroom job. The airline refused.

The Supreme Court held that the Americans with Disabilities Act requires employers to make exceptions to their seniority systems under certain circumstances—those relating to the employer's level of commitment to the seniority system—in order to accommodate the disability-created needs of disabled employees. 535 U.S. at 405. The seniority system in Barnett was a barrier to disabled and non-disabled employees alike: whether or not an employee in the mailroom was disabled, he held that job at the sufferance of employees with more seniority, and could lose it if more senior employees decided to bid for that job. Nonetheless, the majority reasoned that:

> preferences will sometimes prove necessary to achieve the [Americans with Disabilities] Act's basic equal opportunity goal. The Act requires preferences in the form of 'reasonable accommodations' that are needed for those with disabilities to obtain the same workplace opportunities that those without disabilities automatically enjoy…Were that not so, the 'reasonable accomodation' provision could not accomplish its intended objective.

Id. at 397 (emphasis in the original).

In doing so, the majority rejected Justice Scalia's dissent, in which he maintained that accommodations were required for workplace barriers

> only if a disability prevents an employee from overcoming them—barriers that would not be barriers but for the employee's disability…But they do not include

---

2003) (citing Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35 (2d Cir. 2002), cert. denied, 537 U.S. 813 (2002)).

rules and practices that bear no more heavily upon the disabled employee than upon others—even though an exemption from such a rule or practice might in a sense 'make up for' the employee's disability.

Id. at 413 (emphasis in the original). Accordingly, maintained Justice Scalia, a seniority system "which burdens the disabled and non-disabled alike" is not "a disability-related obstacle," and thus changes to a seniority system cannot be an accommodation under the ADA. Id.

The most telling indication that Barnett has superseded Salute is that the majority's reasoning in Salute is nearly identical to the reasoning in Justice Scalia's dissent. Both rely on the argument, rejected by the Barnett, that accommodations are not required for barriers that affect similarly situated individuals, whether disabled or non-disabled. Furthermore, both cling to a constricted understanding of "accommodation" that makes an "unviable distinction" between accommodating a disability and accommodating the needs created by that disability. Salute, 136 F.3d at 309 (Calabresi, J., dissenting) (noting that "[p]laintiffs' respective disabilities, because they prevent them from working, have created a particular need for Section 8 certificates").

Conversely, Judge Calabresi's dissent in Salute presages the Supreme Court's Barnett decision. Calabresi agreed with the Salute majority in its pronouncement that "the duty to make reasonable accommodations is framed by the nature of the particular handicap." Id. at 308. However, Calabresi correctly argued that, with respect to those accommodations that are required under the FHAA:

it is not the handicap itself that is directly accommodated by the change in a policy. Rather, it is the need that was created by the particular handicap that is accommodated...And policies that, in a sense, are unrelated to a given disability must nonetheless be changed because of the disability.

Id. (emphasis in the original).

This conception of accommodation—Barnett's conception of accommodation—is more in concert with the prevailing caselaw than Salute. The Ninth Circuit Court of Appeals had one of the first opportunities to decide a case involving the FHAA's reasonable accommodation requirement post-Barnett. In Giebeler v. M&B Assocs., plaintiff was no longer able to work after becoming disabled by AIDS. His income, which had been $36,000.00 when he was working, decreased to approximately $15,000.00 and came from Social Security Disability Insurance and a subsidy he received from an AIDS program. Because he did not meet the minimum financial requirements to live in the defendant's apartment complex, he requested that the defendant make a reasonable accommodation, by allowing his mother to co-sign the lease, as an exception to the defendant's policy of not allowing co-signers.

The Ninth Circuit applied Barnett, and held that making an exception to a "no co-signer" policy was a reasonable accommodation under the FHAA:

> Just as Barnett was not disqualified from an adjustment to his seniority rank simply because other, non-disabled employees desired the position he sought but were barred from obtaining it by the seniority policy, so Giebeler was not disqualified from an adjustment in [defendant's] financial qualification/no-cosigner standard simply because there were other prospective tenants similarly unable—albeit for reasons other than disability—to earn enough money to meet the rental company's credit standards.

Giebeler, 343 F.3d at 1150. Since Giebeler was "unemployed because of his disability and therefore had insufficient income to qualify for the apartment," relaxation of the defendant's no co-signer policy was necessary to afford Giebeler equal opportunity to use and enjoy an apartment at defendant's apartment complex. Id. at 1156.

Barnett requires a similar result for Plaintiff in the instant case. Plaintiff can no longer work because of her disability, and consequently requires that Defendants accept her Section 8 voucher so that she may have an equal opportunity to use and enjoy her apartment. Barnett

10

teaches that, even though the Defendants' refusal to accept Section 8 vouchers applies equally disabled impecunious and non-disabled impecunious individuals, Defendants' may still be required to make an exception to their practice of refusing Section 8 vouchers.

Defendants speciously argue that Plaintiff is requesting an "economic accommodation" that is not covered by the FHAA. This argument has been foreclosed now that Barnett has been decided. It is significant that Plaintiff's inability to afford her rent without the Section 8 voucher is not the result of what Justice Scalia termed "obstacles that have nothing to do with the disability." Barnett, 535 U.S. at 414. Justice Scalia was referring to the fact that Barnett's inability to meet the seniority requirement for the position he wanted was the result of his lack of tenure on the job, not of his disability. In contrast to the accommodation requested by Barnett, Plaintiff's need for an accommodation is directly related to her disability: her disability has prevented her from working, rendering her unable to afford her apartment. She therefore needs to use her Section 8 voucher to continue to use and enjoy her apartment. It follows that, even applying Justice Scalia's concept of accommodation, Plaintiff's request that her landlord make an exception to its policy and accept her Section 8 voucher qualifies as an accommodation.

Under Barnett, Plaintiff is entitled to an accommodation to her disability in the form of acceptance of her Section 8 voucher by her landlord. The Supreme Court's analysis in that case has overruled the reasoning in Salute. Accordingly, to the extent that Salute requires a different result, the Court must follow Barnett.

### III. DEFENDANTS HAVE NOT SHOWN THAT THE ACCOMMODATION REQUESTED BY PLAINTIFF IS UNREASONABLE AS A MATTER OF LAW.

As stated in Point II, supra, pursuant to the U.S. Supreme Court's holding in Barnett v. U.S. Airways, 535 U.S. 391, Plaintiff's landlord may not refuse her request for an

accommodation under the FHA on the grounds that the requested accommodation is intended to ameliorate the economic consequences of Plaintiff's disability rather than the disability itself. To withstand a motion to dismiss, therefore, Plaintiff need only show that the requested accommodation "seems reasonable on its face, i.e. ordinarily or in the run of cases." Id., 535 U.S. at 401. Once Plaintiff has made this showing, the Defendants must then "show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." Id. at 402.

Plaintiff's request that her landlord accept payment of her rent through the Section 8 voucher program is reasonable on its face. If the accommodation were implemented, the landlord would continue to receive 100 percent of the monthly rent to which it is legally entitled, and would incur no additional substantive obligations. Although HUD regulations require landlords to maintain their properties in good repair, this requirement is also embodied in local law. Compare 24 C.F.R. § 982.401, with N.Y. Real Property Law § 235-b; N.Y.C. Admin. Code § 27-2005 et seq. Similarly, Section 8's requirement that evictions be based on "good cause" is already incorporated in the City's Rent Stabilization Law and Code, 9 N.Y.C.R.R. § 2524.1 et seq. See also, Franklin Tower One LLC v. N.M., 157 N.J. 602, 725 A.2d 1104, 1114 (N.J. 1999) (requirements of Section 8 program mirror those of State law). There is also no reason to believe that the execution of additional paperwork would constitute more than a de minimis burden. Plaintiff has therefore shifted the burden to her landlord to demonstrate that her request would impose a substantial burden under the particular circumstances of this case. The Defendants have not met their burden, as they have failed to set forth any argument on this point.

In making its motion to dismiss the complaint, Defendants cite the Second Circuit's suggestion that the requirements for participation in the Section 8 program constitute an "undue

burden" on landlords as a matter of law. Salute, 136 F.3rd at 301. As noted by the Salute dissent, the Second Circuit's opinions on this issue constituted dicta, since the Court's holding that acceptance of Section 8 was not an accommodation under the FHAA completely disposed of the case, and made unnecessary any inquiry into whether such an accommodation would be reasonable if the FHAA did require it. See Id. at 307 n.16 (Calabresi, J., in dissent).

"While this Court must carefully consider even nonbinding statements of the Second Circuit, it need not, and should not, give controlling weight to them when the issue is presented for actual decision." Maryland Casualty Co. v. W.R. Grace & Co., 1996 U.S. Dist. LEXIS 2963 at (S.D.N.Y. 1996). Dictum should not be followed when it is contrary to Supreme Court precedent. Campbell v. Dominick & Dominick, Inc., 863 F.2d 791,     (11th Cir. 1988); Birnbaum v. Sprint Communs. Co., L.P., 1996 U.S. Dist. LEXIS 17389 at 19 (E.D.N.Y. 1996).

Like its holding in chief, the Second Circuit's dicta in Salute are in conflict with the Supreme Court's reasoning in Barnett v. U.S. Airways. Barnett teaches that the inquiry into reasonableness will typically be case specific. The Supreme Court cited with approval the holdings in Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (1st Cir. 2001) and Barth v. Gelb, 303 U.S. App. D.C. 211, 2 F.3d 1180, 1187 (D.C.C. 1993) that "undue hardship inquiry focuses on the hardships imposed . . . in the context of the particular operations" of an employer or agency [emphasis added]. Indeed, the Second Circuit's dictum in Salute was inconsistent with its own holdings in Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131 (2nd Cir. 1995), cited in Barnett, Stone v. City of Mount Vernon, 118 F.3d 92 (2nd Cir. 1997), and Staron v. McDonald's Corp., 51 F.3d 353, 356 (2nd Cir. 1995), which also emphasize the case specific nature of reasonable accommodation analysis. See also the Second Circuit's post-Salute holdings in

13

Kennedy v. Dressler Rand Co. 193 F.3d 120, 122 (2nd Cir. 1999); Gronne v. Apple Bank for Savings, 1 Fed. Appx. 64, 66, 2001 U.S. App. LEXIS 533 at 4 (2nd Cir. 2001).

Under the Supreme Court's reasoning in Barnett, Plaintiff's showing that her landlord will suffer no loss in rental income due to the proposed accommodation, and will incur no legal obligations substantially different from those already imposed by State law, shifts the burden to her landlord to show that it will undergo undue hardship under the particular facts of her case.

The Second Circuit's apparent assumption that the "voluntary" character of the Section 8 program makes participation per se unreasonable under the FHAA is also at odds with established precedent, and numerous subsequent appellate holdings.[2] The FHAA, by imposing a duty to accommodate disabilities by making reasonable modifications to facially neutral policies, necessarily requires landlords to take actions that they would otherwise not be legally obliged to take. Thus a landlord's decision to permit or prohibit dogs in its buildings is ordinarily a voluntary one, but the FHA will nonetheless require landlords to allow dogs for the blind or hearing impaired. Bronk v. Ineichen, 54 F.3d 425 (7th Cir. 1995). A landlord may voluntarily reserve parking spaces for its employees, but still be required by the FHA to offer such spaces to a tenant with multiple sclerosis. Shapiro, 51 F.3d 328. The fact that a landlord is ordinarily free to adopt a "no Section 8" or "no dog" policy therefore does not support the conclusion that the FHAA can never compel a landlord to make exceptions to such policies.

Subsequent appellate decisions, moreover, have cast doubt on the Second Circuit's conclusion that Congress' decision to make participation in the Section 8 program voluntary indicated an intent to exempt landlords from other statutes that forbid unlawful discrimination

---

[2] Additionally, Salute overlooked the fact that there are instances where a landlord's participation in the Section 8 program is anything but voluntary, such as where a landlord is mandated to accept his tenants' Section 8 vouchers upon its failure to renew or its opting-out of project-based assistance programs. Jeanty v. Shore Terrace Realty Ass'n, 2004 WL 1794496 (S.D.N.Y. 2004).

against tenants. In <u>Franklin Tower One LLC v. N.M.</u>, 157 N.J. 602, 725 A.2d 1104 (N.J. 1999),

for example, the New Jersey Supreme Court rejected a landlord's claim that the Congressional

amendments making Section 8 participation voluntary preempted a New Jersey statute barring

discrimination based on the tenant's source of income. The New Jersey Court noted that the

misnamed "voluntariness provision" referred to in <u>Salute</u>, 136 F.3d at 300, is not an explicit

mandate, but merely an inference "that derives only from one section of the statute that permits

landlords to screen potential tenants, and no language in that provision implies that a landlord's

right to screen tenants includes the right to reject tenants solely on the basis that they are

unqualified for governmental rental assistance." <u>Id.</u>, at 1113. The Court pointed out that nothing

in the statute "mandates that landlord participation in the program be voluntary." <u>Id.</u>

In the absence of a clear Congressional mandate that the voluntary character of Section 8

should override other laws, the Court in <u>Franklin Tower</u> found that the New Jersey anti-

discrimination statute could easily be harmonized with Section 8, since both statutes served the

same goal: "to assist in providing housing to low-income families." <u>Id.</u>, at 1113.[3] <u>Accord</u>

<u>Commission on Human Rights & Opportunities v. Sullivan</u>, 250 Conn. 763, 739 A.2d 238

(Conn. 1999); <u>Attorney General v. Brown</u>, 400 Mass. 826, 511 N.E.2d 1103 (Mass. 1987).

After <u>Commission on Human Rights & Opportunities v. Sullivan</u>, 739 A.2d 238; <u>Franklin</u>

<u>Tower One LLC v. N.M.</u>, 725 A.2d 1104; and <u>Attorney General v. Brown</u>, 511 N.E.2d 1103,

HUD enacted a regulation affirming their holdings. The regulation specifically provides that

"nothing in [the regulations] is intended to pre-empt operation of State and local laws that

prohibit discrimination against a Section 8 voucher-holder because of status as a Section 8

---

[3] Indeed, the provision of 42 U.S.C. § 1437f(d)(1)(A) that makes landlords responsible for "selecting" voucher holders long coexisted harmoniously with the provisions of former Section 1437f(t) prohibiting landlords from rejecting applicants solely based on their status as voucher holders.

voucher-holder." 24 C.F.R. § 982.53(d). Thus HUD's regulation reinforces that the "voluntary" nature of the Section 8 program is not at the heart of the Section 8 statute, because State and local laws that prohibit discrimination against Section 8 holders, by their nature compel participation. See Commission on Human Rights & Opportunities v. Sullivan, 739 A.2d 238; Franklin Tower One LLC v. N.M., 725 A.2d 1104; and Attorney General v. Brown, 511 N.E.2d 1103.

The logic of Franklin Tower applies with even greater force to the anti-discrimination provisions of the FHAA. If Congress did not intend the "voluntariness provisions" to override the protections of State anti-discrimination statutes, it surely did not intend to override Federal anti-discrimination laws. It should not be forgotten that under the FHAA, the failure to offer a reasonable accommodation constitutes discrimination against the handicapped, and that such discrimination is no less invidious than that directed against racial minorities or other protected classes. 42 U.S.C. § 3604(f)(3)(B). It could hardly be argued, for example, that the "voluntary" character of the Section 8 program would allow a landlord to accept the subsidy of a white applicant while rejecting the subsidy of an African-American. Cf., Bronson v. Crestwood Lake Section 1 Holding Corp., 724 F.Supp. 148 (S.D.N.Y. 1989). The result should be no different where the victim of discrimination is a disabled person.

Other regulations promulgated by HUD to effectuate the Section 8 program make clear that the provisions of Section 8 are to be read in harmony with, not in derogation of, the requirements of fair housing legislation. As discussed above, the Section 8 statute contains no explicit language making the program voluntary, much less any specific expression of Congressional intent to exempt landlords from the FHA. Since Congress' intentions on this issue are, at best, ambiguous, HUD's interpretation of Congress' intent is entitled to deference by

this Court. Kruse v. Wells Fargo Home Mortg., Inc., 383 F.3d 49, 55 (2nd Cir. 2004) ("as long as 'the agency's reading fills a gap or defines a term in a reasonable way in light of the Legislature's design, we give that reading controlling weight, even if it is not the answer the court would have reached if the question initially had arisen in a judicial proceeding,'" citing, Regions Hosp. v. Shalala, 522 U.S. 448, 457); Coke v. Long Island Care at Home, Ltd., 376 F.3d 118, 126 (2nd Cir. 2004); Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984).

Part 8 of HUD's regulations for the Section 8 program, adopted pursuant to Section 504 of the Rehabilitation Act, are specifically directed to insuring "Nondiscrimination Based on Handicap in Federally Assisted Programs and Activities of the Department of Housing and Urban Development." 24 C.F.R. 8.1 et seq. Section 8.4(a), entitled "Discrimination Prohibited," states that

> No qualified individual with handicaps shall, solely on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity that receives Federal financial assistance from the Department.

The regulations further provide that

> A recipient, in providing any housing, aid, benefit, or service in a program or activity that receives Federal financial assistance from the Department may not, directly or through contractual, licensing, or other arrangements, solely on the basis of handicap: ...
>
> (v) Aid or perpetuate discrimination against a qualified individual with handicaps by providing significant assistance to an agency, organization, or person that discriminates on the basis of handicap in providing any housing, aid, benefit, or service to beneficiaries in the recipient's federally assisted program or activity;

24 C.F.R. § 8.4(b)(1).

HUD's "Housing Choice Voucher Program Guidebook" 7420.10 is also replete with provisions designed to effectuate fair housing goals within the context of the Section 8 program.

HUD requires local Public Housing Agencies (PHAs) to adopt Five Year and Annual Plans which "further fair housing and conform with Title VI of the Civil Rights Act of 1964, the Fair Housing Act, Section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act of 1990." The PHA "must also certify that it will affirmatively advance fair housing opportunity." Guidebook, at 3-8.

According to the Guidebook, new recipients of Section 8 vouchers are required to attend briefings which must include "discussion of significant aspects of applicable state and local laws, including fair housing laws." Guidebook, p. 8-4 [emphasis added]. Local housing authorities must give new participants "briefing packets" that include HUD's housing discrimination complaint form, and "the PHA must provide the family with information on how to fill out and file a housing discrimination complaint" if the family "believes it has been discriminated against in its search for housing on the basis of race, color, religion, sex, national origin, age, familial status, or disability." Guidebook, p. 8-14 [emphasis added]. HUD urges PHAs to provide Section 8 participants with contact information for "legal assistance groups, fair housing organizations, [and] tenant organizations ..." Guidebook, p. 8-8

HUD's Section 8 contracts also include requirements that owners "not discriminate against any person because of race, color, religion, sex, national origin, age, familial status, or disability in connection with the HAP contract," and oblige owners to cooperate "in conducting equal opportunity compliance reviews and complaint investigations." Guidebook, at 11-13. See also, Guidebook, at 1-14 (one of owners' "major responsibilities" is "complying with fair housing and equal opportunity requirements"); 24 C.F.R. § 8.28(b) (contracts "shall include necessary assurances of nondiscrimination"). Indeed, owners who violate the FHAA are not eligible to participate in the Section 8 program. Guidebook at 11-1. Cf., Hill v. Group Three

Housing Development Corp., 799 F.2d 385, 389 (1986) (HUD requires landlords to "comply with all federal, state, and local fair housing and civil rights laws"). Most recently HUD, in accordance with President Bush's "New Freedom Initiative" and Executive Order 13217, has released detailed guidelines intended to reduce obstacles faced by disabled voucher holders in their search for housing. See, HUD PIH Notice 2005-5, issued February 1, 2005.

HUD has thus made it abundantly clear that the goals of the Section 8 program are consistent with the vigorous enforcement of fair housing laws, including those that protect the disabled. This Court should therefore find that the while participation in the Section 8 program is ordinarily a "voluntary" decision on the part of landlords, nothing in Section 8's statutory scheme exempts landlords from compliance with the mandates of the Fair Housing Act, including the need to accommodate the disabilities of Section 8 participants. Since the landlord has here made no allegation that acceptance of Plaintiff's Section 8 subsidy would create any special burden based on the particular circumstances of its business, Defendants' motion to dismiss must be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss in its entirety and grant such other and further relief as this Court deems appropriate.

Dated: February 6, 2008
Brooklyn, New York

JOHN C. GRAY, ESQ.
SOUTH BROOKLYN LEGAL SERVICES, INC.
105 Court Street
3rd Floor
Brooklyn, New York 11201
(718) 237-5531
Attorneys for Plaintiff

By: _____
MICHAEL L. WEISBERG (MW8388)